UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT I. GOODSTEIN,
         Plaintiff,

v.

INDUSTRIAL INDEMNITY CO., et al.,
         Defendant(s).

NO. C02-1669

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This matter comes before the Court on Defendants' Motions for Summary Judgment (Dkt. No. 44). In considering this motion, the Court has reviewed all materials submitted in support of and in response to the motion. Having considered all relevant materials, and having heard oral arguments from the parties on June 28, 2005, the motion is hereby GRANTED. Insurers have no duty to indemnify the insureds under a comprehensive general liability policy for the difference between the appraised value and the "as is" sale price of properties that the insureds contaminated and were liable to clean up under CERCLA, but which they opted to sell instead.

## BACKGROUND

      This case presents issues regarding who ultimately pays for the cleanup of sites that are deemed to be hazardously contaminated under CERCLA (42 U.S.C. §9601, *et seq.*). Plaintiff Goodstein is the Receiver for several properties owned by the Sternoff family. Two of those properties–one in Renton, WA ("the Renton property") and one on Marginal Way in Seattle, WA ("the Marginal Way property") are at issue in this litigation. From the late 1960's until the mid-1980's, the Sternoffs used the Renton and Marginal Way properties for the scrapping and recycling of

ORDER GRANTING SUMMARY JUDGMENT- 1

1   electrical transformers and automobiles.  Throughout the years, the Sternoff family had many insurers.

2   Their primary and umbrella liability coverage was placed with Defendants Industrial Indemnity and

3   Industrial Indemnity of the Northwest (referred to collectively as "Industrial")  from 1980 to 1986.

4         In 1989, the EPA had identified the Marginal Way property as a potential hazardous waste site

5   (Schoeggl Decl. at 35).  By 1991, the Washington State Department of Ecology had done a site

6   summary on the Renton property and identified it as a site needing environmental remediation.  In

7   March 1990, these properties were placed into a Receivership (with Robert Goodstein named as

8   Receiver) along with the rest of the Sternoff family holdings.  The receivership court charged the

9   Receiver with evaluating the contamination levels of the properties and coming up with a plan to bring

10  these properties into compliance with state and federal law.  (Christensen Decl., Ex. 4).

11        By a letter dated September 28, 1990, the Receiver's attorney notified Industrial that the

12  Receiver "may make a claim" under the Sternoff's Comprehensive General Liability (CGL) policies

13  with Industrial for environmental damage to the Renton and Marginal Way properties.  This letter also

14  requested that Industrial send the Receiver copies of the Sternoffs' policies for review. (Schoeggle

15  Decl. at 100). On October 19, 1990, a representative of Industrial responded to the Receiver's request

16  as if he were making a claim. (Schoeggle Decl. at 103). On October 22, 1990, the attorney for the

17  Receiver wrote back to Industrial's representative to clarify that, "we are not presently making any

18  claims under these policies." This letter reiterated the Receiver's request for copies of the policies.

19  (Schoeggl Decl. at 104). In December 1992, Industrial closed the Sternoff file due to a lack of activity.

20  Just before the file was closed, a summary of what was known in the case and a list of possible

21  defenses to a potential claim was prepared.  Industrial did not send a reservation of rights letter to the

22  Receiver.

23      The Receiver commissioned environmental studies to be done on the properties and

24  investigated the options for remediating them.  The Receiver then presented several options to the

25  Receivership court, which ordered the Receiver to sell the properties "as is." (Schoeggl Decl. at 107-

26  ORDER GRANTING SUMMARY JUDGMENT- 2

128). Accordingly, the Receiver sold the Renton property in August 1996, and the Marginal Way property in March 1998. (Schoeggle Decl. at 131-158). On September 25, 1998, the Receiver made a demand under the Industrial policy for the environmental damage to the sites, as quantified by the difference between the appraised value of the properties and the "as is" sales price of the properties. (Schoeggl Decl. at 161). Industrial rejected this claim and Plaintiff brought the suit currently before this Court.

ANALYSIS

I.  Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

II.  Are Plaintiff's Damages Covered under the Industrial CGL Policies?

Defendants claim that Plaintiff presents a unique theory of damages in this case that is not supported by either its CGL policy with Idustrial, or by the relevant body of law. Defendants point out three major flaws in Plaintiff's case. First, they note that in Washington third party insurance of

ORDER GRANTING SUMMARY JUDGMENT- 3

1  the type the Sternoffs purchased does not cover an insureds' own economic losses. Second,

2  Defendants claim that the Receiver never properly tendered a defense and that they, therefore, did not

3  have adequate notice of the claim. Finally, Defendants state that the Receiver breached the "voluntary

4  payment" provision of the Industrial policies by agreeing to sell the properties without notifying

5  Industrial before the sale so that it would have a meaningful opportunity to object, if necessary.

6  Plaintiff counters that Defendants had sufficient notice of the claim and were obligated, under statute,

7  to conduct a reasonable investigation into it, which they neglected to do. Plaintiff also argues that it is

8  owed the difference between the appraised value of the properties and the "as is" sales price because

9  the properties were sold under court order and because Defendants would have been liable for at least

10  this amount if the Receiver had chosen to remediate the properties himself.

11       A. CERCLA Liability and Insurance Coverage

12       In 1990, the Washington state Supreme Court held that the response costs incurred by an

13  insured to clean up a contaminated property under CERCLA (42 U.S.C. §9601, *et seq.*) constituted

14  "damages" under a comprehensive general liability (CGL) insurance policy, under Washington law.

15  Boeing v. Aetna Cas. & Surety Co., 113 Wn. 2d 869, 784 P. 2d 507 (1990). In a related decision, the

16  Western District of Washington held that receipt of a "Potentially Responsible Person" ("PRP") letter

17  from the EPA that named the insured as someone who may be responsible for environmental

18  contamination constituted a "suit" under CGL policies. Time Oil Co.v. Cigna Property & Casualty Ins.

19  Co., 743 F. Supp. 1400 (W.D. Wash. 1990). In 1991, the 9th Circuit reached this same conclusion.

20  Aetna Cas. & Surety Co. v. Pintlar Corp., 948 F. 2d 1507 (9th Cir. 1991). The Ninth Circuit

21  particularly recognized the practical and public policy advantages in having parties responsible for

22  pollution cooperate with environmental agencies in the cleanup of these sites. It worried that if notice

23  of potential environmental liability were "not held to trigger the duty to defend under CGL policies,

24  then insureds might be inhibited from cooperation with the EPA in order to invite the filing of a formal

25  complaint." Id. at 1517. In 1990 and 1991, the federal and state governments identified the Sternoff

26  ORDER GRANTING SUMMARY JUDGMENT- 4

properties as potential hazardous waste sites and named the Sternoffs as potentially responsible people for contamination on their properties stemming from years of recycling operations on those sites. Accordingly, the Court concludes that at the time these letters were sent, there was a potential "suit" under Industrial's CGL policies. Defendants recognize applicable precedent in this area of law, but then argue that the events of the intervening years have rendered any potential claim that the Receiver might have had against Industrial unenforceable.

B.  Can the diminished sale price of an "as is" property support damages under a CGL policy ?

Defendants' first argument against the Plaintiff's recovery is the idea that the "damages" the Receiver seeks are not "damages" that are payable under the CGL policies that the Sternoffs purchased. The language of the policies at issue states that, "[t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [property damage] to which the insurance applies. . ." (Pl's Resp. at 5). Defendants point out that Washington courts have been very careful to maintain a strict distinction between third and first party insurance policies. "Third party insurance involves protection for the policyholder for liability it incurs to someone else, while first party insurance involves protection for losses to the policyholder's own property." Olds-Olympic, Inc. v. Commercial Union Ins. Co., 129 Wn. 2d 464, 479, 918 P. 2d 923 (1996).

Plaintiff's claim in the case at hand presents an interesting attempt at hybridizing these two concepts. The government-imposed duty to clean up the properties is a major driving force behind the decrease in the selling price of the properties. The properties were sold "as is" and at a discounted price because the buyer acquired not just the properties themselves, but also the duty to clean them up. No other case in the Ninth Circuit or in Washington has addressed a similar scenario.

The key question here is whether it makes good public policy sense to allow a contaminating insured to recover under its third party liability policy when it has not actually conducted a cleanup, but has borne a financial burden as if the cleanup has been accomplished? On the one hand, Plaintiff's

ORDER GRANTING SUMMARY JUDGMENT- 5

approach fosters efficiency by allowing contaminating parties who are unable or uninterested in remediating their properties to transfer them to someone more able to do the remediation that is required by law.  On the other hand, Defendants argue that this approach allows polluters to "foist" their responsibility onto someone else without feeling any consequences.  After damaging property, a polluter could sell it at a reduced fee and expect its insurers to pick up the difference.

Washington courts have urged a common-sense approach to the interpretation of what qualifies as "damages" in environmental cleanup cases.  In <u>Boeing v. Aetna</u>, the Washington State Supreme Court explained its common-sense approach to damages by quoting an earlier case:

> 'If the state were to sue in court to recover in traditional "damages," including the state's costs incurred in cleaning up the contamination, for the injury to the ground water, defendant's obligation to defend against the lawsuit and to pay damages would be clear.  It is merely fortuitous from the standpoint of either plaintiff or defendant that the state has chosen to have plaintiff remedy the contamination problem, rather than choosing to incur the costs of clean-up itself and then suing plaintiff to recover those costs.  The damage to the natural resources is simply measured in the cost to restore the water to its original state.' 113 Wn. 2d. at 879 (<u>quoting</u> <u>United States Aviex Co. v. Travelers Ins. Co.</u>, 125 Mich. App. 579, 589-90, 336 N.W. 2d. 838 (1983).

Plaintiff is asking this Court to extend the logic of these prior cases a step further by asking that the Court allow the real-estate market to determine the cost of the damage to natural resources.  The Court cannot stretch the language of the CGL policy under which Plaintiffs seek recovery to encompass this broad theory of damages.  As quoted above, the language of the policy specifies that Defendants will pay "on behalf of the insured," rather than to the insured.  This language  reflects an intent to indemnify the insured for someone else's loss, not for the insured's own loss.   As Defense counsel correctly pointed out at oral argument, there are many instances where potential insurance claims arise, but are never paid out because business reasons make it more attractive for parties to settle claims in a way that precludes indemnification.  Such is the case here.  The Court finds that the Receiver made a decision to divest the Sternoffs of CERCLA liability by selling the Renton and Marginal Way properties, along with the duty to clean them up, at a discounted price.  As

ORDER GRANTING SUMMARY JUDGMENT- 6

1 consideration for the discount, the Sternoffs received from the buyer of the properties an agreement to

2 hold the Sternoffs and their interests harmless. Having made this bargain, the Receiver may not now

3 turn to the Court and ask for indemnification for a cleanup that he chose not to undertake. The

4 language of the policy will not support such an award, nor will sound public policy reasoning.

5 Plaintiff's claim of indemnification under its Industrial policies will, therefore, be dismissed.

### IV. Without a Duty to Indemnify, there is no Duty to Defend

Where an insured's claim is clearly outside of a policy's coverage, the insurer has no duty to defend. <u>Cle Elum Bowl, Inc. v. North Pacific Ins. Co.</u>, 96 Wn. App. 698, 703, 981 P. 2d 872 (1999). Here, the Court has determined that Plaintiff's claim is not one that is supported by the language of the policies in question and that Plaintiff is not entitled to indemnification under the policy. Accordingly, Plaintiff's claim that Defendants had a duty to defend it will also be dismissed.

### V. Cross-Assignment of Claims

At the end of oral argument, Plaintiff's counsel raised the issue of whether its agreement with the buyer of the Renton and Marginal Way properties to cross-assign rights to insurance coverage creates a different outcome in this case. The Court observes that this agreement was only mentioned briefly by Plaintiff and not in a way that put the substance or validity of this agreement properly before the Court for consideration. (Pl's Resp. at19; Christensen Decl. at ¶3-4). Neither party submitted the text of this agreement to the Court for its examination. In fact, Plaintiff admits that, "[t]he agreement has not yet been finalized." (Christensen Decl. at ¶3). Under these circumstances, it would not be proper for the Court to rule on the effect of such an agreement.

### CONCLUSION

The monetary difference between the appraised value of the Marginal Way and Renton properties and the "as is" sales price of those properties after contamination and before clean up is not covered as damages by the CGL policy between Industrial and the Sternoff family. Industrial has no duty to indemnify the Receiver of the Sternoffs' property for this sum, nor is there any duty to defend

ORDER GRANTING SUMMARY JUDGMENT- 7

1  that arises as part of such a claim.  Accordingly, the Court hereby GRANTS summary judgment to the
2  Defendants and DISMISSES this case with prejudice.

4  The clerk is directed to send copies of this order to all counsel of record.
5      Dated: July 8, 2005

                                            Marsha J. Pechman
                                            United States District Judge

26  ORDER GRANTING SUMMARY JUDGMENT- 8